## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN WILD HORSE CAMPAIGN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>Defendant. | Civil Action No. 22-2971 (BAH)<br><br>Judge Beryl A. Howell |
| AMERICAN WILD HORSE CAMPAIGN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>Defendant. | Civil Action No. 22-3027 (BAH)<br><br>Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

In these two consolidated cases, plaintiff American Wild Horse Campaign ("plaintiff") challenges the adequacy of the search performed by defendant United States Bureau of Land Management ("defendant" or "BLM") to locate, in response to eight requests made, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, records relating to the Rock Springs Grazing Association ("RSGA") for the four-year period between January 1, 2018, through December 31, 2021. *See* Def.'s Mot. Summ. J. ("Def.'s MSJ") at 1, ECF No. 25; Pl.'s Cross-Motion for Summary Judgment ("Pl.'s XMSJ") at 1, ECF No. 27.[1]  In over 400 pages of

---

[1]     The memoranda filed in support of the pending cross-motions are docketed twice and, to simplify citation, only one of the duplicate memoranda is cited.  For example, plaintiffs' memorandum in support of its cross-motion

briefing, excluding duplicates and including supporting declarations and exhibits from both sides, plaintiff criticizes defendant's construction of the FOIA requests at issue as too narrow, and defendant's selection of custodians, search locations, and search terms to locate and retrieve responsive records as too limited.  Pl.'s Mem. Supp. XMSJ ("Pl.'s Opp'n") at 22-35, ECF No. 27-19; Def.'s Reply Supp. MSJ ("Def.'s Reply") at 6-18, ECF No. 30.  For the reasons stated below, defendant's motion for summary judgment is granted in part and denied in part, and plaintiff's cross-motion for summary judgment is denied.[2]

## I.    BACKGROUND

Relevant factual background and procedural history is summarized below.

### A.    Factual Background

Plaintiff is a nonprofit organization that seeks to "ensure the future and conservation of America's iconic wild horses and burros and the Western public lands where they roam."  Pl.'s Opp'n, Attach. 2, Second Decl. of Ameila Martine Perrin ("2d Perrin Decl.") ¶ 2, ECF No. 27-2. Defendant issued a grazing permit to the RSGA, allowing the grazing of its livestock on the Rock Springs Allotment, public lands totaling approximately a million acres.  *Id.* ¶ 41.  As part of its "investigative work," plaintiff submitted eight FOIA requests, between January 9, 2022, and January 16, 2022, to BLM's Wyoming State Office regarding RSGA and this organization's activities on the Rock Springs Allotment.  *Id.* ¶¶ 7, 12-13, 26-27.

---

for summary judgment and opposition to defendants' motion for summary judgment is docketed twice, at ECF Nos. 26 and 27; only the memorandum at ECF No. 27 is cited. Defendants' memorandum in support of the motion for summary judgment and in opposition to plaintiffs' cross-motion are docketed at ECF Nos. 30 and 31, and only the memorandum at ECF No. 31 is cited.

[2]    Defendant requests summary judgment as to the propriety of redactions made to the Grazing Lease Agreement between RSGA and a third party, pursuant to 5 U.S.C. § 552(b)(4), Def.'s Mem. Supp. MSJ ("Def.'s Mem.") at 18-21, and plaintiff does not oppose, Pl.'s Mem. Supp. Cross-Mot. Summ. J. ("Pl.'s Opp'n") at 8. Consequently, defendant is entitled to summary judgment as to the redactions on the Grazing Lease Agreement produced to plaintiff.

Four of these FOIA requests ("Group 1") seek the same five items for each of four separate years of 2018, 2019, 2020, and 2021:

> 1) All records that discuss or describe Rock Springs Grazing Association, or the grazing allotments that the Bureau has authorized the Association to use, that are to be maintained in any Allotment/Management Files, Parts 1 – 6, as set forth in Bureau Handbook H-4010-1: Rangeland Management Records;

> 2) All records that discuss or describe Rock Springs Grazing Association grazing allotments or management - Allotment Management, Objectives, Goals;

> 3) All records that discuss or describe Rock Springs Grazing Association grazing allotments or management Activity Plans - Allotment Management Plan (AMP), Coordinated Resource Management Plan (CRMP), Habitat Management Plan (HMP);

> 4) All records that discuss or describe Rock Springs Grazing Association grazing allotments or management - Allotment Map, Monitoring Plans, Range Improvement Cross-Reference List; and

> 5) All records that discuss or describe Rock Springs Grazing Association grazing allotments or management - supervision-inspection reports, monitoring studies (including all photos), actual use, utilization, trend/production/composition, climate, evaluations.

Def.'s Statement of Undisputed Facts ("Def.'s SUMF") ¶¶ 18-23, ECF No. 25-2.[3]  Group 1's first item requests records "that discuss or describe [RSGA], or the grazing allotments" authorized for use by RSGA, with the limitation that such records are located in the "Allotment/Management Files, Parts 1 – 6" (item #1).  Group 1's remaining items share the same prefatory text to target "records that discuss or describe [RSGA] grazing allotments or management" of those allotments, as further defined by specific enumerated topics: "Allotment Management, Objectives, Goals" (item #2); "Activity Plans -Allotment Management Plan (AMP), Coordinated Resource Management Plan (CRMP), Habitat Management Plan (HMP)" (item #3); "Allotment Map, Monitoring Plans, Range Improvement Cross-Reference List," (item

---

[3]     Unless otherwise noted, the facts are not disputed.

#4); and "supervision-inspection reports, monitoring studies (including all photos), actual use, utilization, trend/production/composition, climate, evaluations" (item #5).

The other four FOIA requests ("Group 2") seek seven identical items for each of same four years covered in Group 1:

> 1) All records that discuss or describe Rock Springs Grazing Association (RSGA), or the grazing authorizations that the BLM has issued to the RSGA, that are to be maintained in any Grazing Case Files, Sections 1 – 6, as set forth in BLM Handbook H-4010-1: Rangeland Management Records.

> 2) All records that discuss or describe all Rock Springs Grazing Association (RSGA) grazing authorizations permit leases - decisions, allotment maps, allotment description, rangeline agreements, Allotment Management Plan (AMP).

> 3) All records that discuss or describe all Rock Springs Grazing Association (RSGA) grazing authorizations - billings, applications, grazing bills, crossing permits.

> 4) All records that discuss or describe all Rock Springs Grazing Association (RSGA) grazing authorizations - transfers, supplemental information, deed, lien holder or mortgage information.

> 5) All records that discuss or describe all Rock Springs Grazing Association (RSGA) grazing authorizations - unauthorized use, unauthorized use actions, decisions, related correspondence.

> 6) All records that discuss or describe all Rock Springs Grazing Association (RSGA) grazing authorizations - improvements, assignment of range improvements, copies of range Improvement permits or co-operative agreements.

> 7) All records that discuss or describe all Rock Springs Grazing Association (RSGA) grazing authorizations - general correspondence, letters, conversation records.

Def.'s SUMF ¶¶ 28-29.  Similarly to Group 1, Group 2's first item requests records "that discuss or describe [RSGA], or the grazing authorizations" issued to RSGA, with the limitation that such records are located in "any Grazing Case Files, Sections 1 – 6" (item #1).  Group 2's remaining items share the same prefatory text that the request targets "records that discuss or describe [RSGA] grazing authorizations," enumerating specific types of records related to those "grazing authorizations."

**B.    Defendant's Processing of Plaintiff's FOIA Requests**

BLM's Deputy State Director, Division of Support Services, Wyoming State Office Nathan E. Wallace ("Wallace") initially received the FOIA requests and, as the individual who had "the most knowledge concerning the location of potentially responsive records," determined that both groups of requests generally sought information related to the RSGA and its grazing allotments and authorizations.  Def.'s MSJ, Attach. 3, Decl. of Detty Crockett ("Crockett Decl."), U.S. Dept. of the Interior, Gov't Information Specialist and Privacy Officer, ¶¶ 9-10, ECF No. 25-3.  He concluded that the Office most likely to have responsive records was BLM's Rock Springs Field Office for several reasons, including that the Rock Springs Field Office (1) "oversees the grazing permit for the RSGA"; (2) is the custodian for the associated Federal records," and (3) "would . . . be the only office to keep records pertinent to the RSGA and which would be potentially responsive to Plaintiff's requests."  Crockett Decl. ¶ 10.

After making this determination, Wallace then contacted Lisa K. Aleshire ("Aleshire"), the FOIA liaison and Realty Specialist for the Rock Springs Field Office.  *Id.* ¶ 11.  Aleshire reviewed the requests and determined, based on her personal knowledge of prospective custodians' day-to-day work on the RSGA, that the individuals most likely to have responsive records were Kimberlee Foster ("Foster"), the Rock Springs Field Manager, and Spencer G. Allred ("Allred"), a Supervisory Rangeland Management Specialist for defendant's Rock Springs Field Office.  *Id.* ¶ 12.  Foster and Allred, in turn, "affirmed that they would be the only custodians with responsive records."  *Id.* ¶ 12.  Aleshire then sent the FOIA requests to Foster and Allred for processing.  *Id.*

After reviewing the requests, the two custodians, Foster and Allred, "determined that, although the Group 1 and Group 2 FOIA Requests contained slightly different language and

references to BLM Manuals, the requests were effectively requesting the same information." Def.'s MSJ, Attach. 5, Decl. of Spencer G. Allred ("Allred Decl.") ¶ 28, ECF No. 25-5. He further explained that two file systems are "primarily" used in "administering grazing authorizations": the Allotment file contains certain information about "the land on which grazing occurs," and the Grazing Case file, or Authorization File, "has information related to the grazing permit holder, such as their grazing permit and bills for grazing." *Id*. ¶ 29. Information requested in Groups 1 and 2 requests "overlapped" and "was to be found in both the Allotment File for the Rock Springs Allotment and the Case File for the [RSGA]." *Id*. ¶ 31. Thus, both files were searched for responsive records regarding RSGA's "grazing allotments and grazing authorizations." *Id.* ¶ 40. Both files consist of hardcopy and electronic files, Def.'s Reply, Supplemental Decl. of Spencer G. Allred ("2d Allred Decl.") ¶ 17, ECF No. 31-12, and both hard copy and electronic files were searched, Crockett Decl. ¶¶ 14-16.

The two declarants describe the search slightly differently, though only one of the declarants was an actual custodian who participated in the search. Crockett, who was not a custodian but assumed responsibility for coordinating the response to the FOIA requests after her supervisor, Wallace, left his BLM employment, *id.* ¶ 2, averred that using "Rock Springs Grazing Association" and "RSGA" as search terms, the custodians "electronically searched the shared drive in their office, government assigned laptops, desktops and hard drives for records related to [RSGA] and its grazing allotments, authorizations, and management of its allotments, including a search through all folders," *id.* ¶ 14. In contrast, Allred, who is one of the two actual custodians performing the search, avers that both the Grazing Case File for RSGA, and the Rock Spring's Allotment File were manually searched. 2d Allred Decl. ¶ 15. He explained that "[a]ll digital files on our computer network associated with the Rock Springs Allotment are placed in

an electronic folder called 'ROCK SPRINGS – 13018," and this is "the only location on computer network where [it] keep[s] official records related to the Rock Springs Allotment and the [RSGA]." *Id.* ¶ 15. Rather than use search terms, Allred manually "checked each record in the folder to determine whether it was responsive to Plaintiff's requests." *Id.* ¶ 15. The custodians also reviewed "all available … hardcopy records" in the Allotment and Grazing Case Files for the RSGA. *Id.*; *see also* Allred Decl. ¶ 32 ("[W]e searched both the Allotment File for the Rock Springs Allotment and the Case File for the [RSGA]."); *id.* ¶ 34 (attesting that he "personally searched the Grazing File for the RSGA" and "the Allotment file for the Rock Springs Allotment"). In addition, both declarants claim that the custodians searched their emails using the term "rsga@wyoming.com" and reviewed for correspondence regarding RSGA's grazing operation in the Rock Springs Allotment or otherwise met the criteria of the FOIA requests. Crockett Decl. ¶ 14; Allred Decl. ¶ 34; 2d Allred Decl. ¶ 20.

Based on his "6 years of experience within the Rock Springs Field Office" and his "knowledge of grazing programs and related information," Allred averred that "there were no other locations reasonably likely to have responsive records after exhausting all potential program files as well as a reasonable list of employees who would have control over the relevant records in question," Allred Decl. ¶ 36, and that no "any additional searches [] would be likely to locate additional records responsive to Plaintiff's requests," *id.* ¶ 35. Indeed, "[a]ll electronic and hard copy files where information concerning the RSGA grazing allotments and grazing authorizations have been searched." 2d Allred Decl. ¶ 28.

As a result of the search, defendant produced to plaintiff a total of 458 pages of records "containing the requested grazing allotments and authorization documents regarding the [RSGA] that were responsive to" both Groups 1 and 2 requests. *Id.* ¶ 17; Crockett Decl. ¶ 20; Allred

Decl. ¶ 33 (averring that defendant "produced identical sets of documents for the Group 1 and Group 2 FOIA requests").  In addition, defendant produced to plaintiff, in response to two requests— BLM-2022-00149 in Group 1 and BLM-2022-001514 in Group 2—"a record exported from RAS [BLM's Rangeland Administration System database] titled 'RSGA Compliance (2018-2021).'"  2d Allred Decl. ¶ 24.

###    C.    Procedural History

Plaintiff administratively appealed defendant's final response to its Group 1 and Group 2 requests, which appeals were denied.  SUMF ¶ 16.  Plaintiff then instituted two different actions. *See generally* Compl., No. 22-cv-2971, ECF No. 1; Compl., No. 22-cv-3027, ECF No. 1.  The first action, filed on October 2, 2022, and randomly assigned to the undersigned, challenged defendant's response to the Group 1 requests.  *See* Compl., No. 22-cv-2971, ECF No. 1.  The second action, filed on October 6, 2022, and randomly assigned to another Judge on this Court, challenged defendant's response to the Group 2 requests.  *See* Compl., No. 22-cv-3027, ECF No. 1.

In the action challenging defendant's response to the Group 2 requests, several rounds of litigation ensued, with defendant first filing a motion to dismiss the complaint, which motion was denied, *see* Order, No. 22-cv-3027, ECF No. 12.  In opposing the motion to dismiss, plaintiff described the requests at issue as asking "for 'Rocks Springs Grazing Association Allotment and Grazing Case Files and records.'"  Pl.'s Mem. P. & A. Opp'n to Def.'s Mot. to Dismiss, at 4, No. 22-cv-3027, ECF No. 10.  This was followed by defendant's motion for reconsideration of denial of the motion to dismiss, which reconsideration motion was also denied, *see* Order, No. 22-cv-3027, ECF No. 19.

The government next filed a motion to reassign the case directly to the undersigned, as the Judge with an earlier-filed related case, noting that "although the Group 1 Requests and Group 2 Requests appeared to reference two separate files, in practice there was significant overlap in the materials maintained in both files," and "overlap in the requests themselves." Def.'s Mot. To Reassign Case As Related Case at 3, No. 22-cv-3027, ECF No. 31.  Plaintiff opposed reassignment, with descriptions of the requests at issue that bear on the parties' ongoing dispute about the scope of the requests.  According to plaintiff, the two cases involved "two different types of records":  the four requests at issue in Civ. No. 22-cv-3027 were "for Grazing Case File records concerning Rock Springs Grazing Association," Pl.'s Opp'n to Def.'s Mot. for Case Reassignment at 4, ECF No. 32, while the four requests at issue in the instant case were "for Allotment/Management records concerning Rock Springs Grazing Association," *id*. at 5. The government's motion for direct reassignment to the undersigned was granted on April 29, 2024, Order, No. 22-cv-3027, ECF No. 33, and the two lawsuits were consolidated the same day, *see* Min. Order (Apr. 29, 2024).

The parties have now filed cross-motions for summary judgment regarding the adequacy of defendant's search for records responsive to both Groups 1 and 2 requests, which motions became ripe on February 12, 2025.  Def.'s MSJ at 1; Pl.'s XMSJ at 1; *see also* Pl's Reply Supp. XMSJ ("Pl.'s Reply") at 4-26, ECF No. 32.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 entitles a party to "summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 7988, 8805 (D.C. Cir. 2006)); *see also*

Fed. R. Civ. P. 56(a).  Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"Congress enacted [FOIA] 'to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny[]' . . . to 'achieve greater transparency in support of open government.'" *Insider Inc. v. Gen. Servs. Admin.*, 92 F.4th 1131, 1133 (D.C. Cir. 2024) (internal citation omitted) (first quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 31-32 (D.C. Cir. 2018); and then quoting *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 783 (D.C. Cir. 2018)).  "To prevail on summary judgment against a challenge to the adequacy of an agency's search, 'the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Cabezas v. FBI*, 109 F.4th 596, 602 (D.C. Cir. 2024) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  The agency must support its search efforts with a "reasonably detailed affidavit," *Oglesby*, 920 F.2d at 68, which is "accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), that "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched," *Oglesby*, 920 F.2d at 68.  The agency's declaration's "presumption of good faith, . . . cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quoting *Safecard*, 926 F.2d at 1200).  On the other hand, "summary judgment must be denied 'if a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials.'" *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (brackets omitted) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

## III.    DISCUSSION

As noted, the parties' cross-motions for summary judgment dispute only the adequacy of defendant's search for records.  Pl.'s Opp'n at 8; Def.'s Reply at 2.  The adequacy of defendant's search is "measured by a 'standard of reasonableness' and is 'dependent upon the circumstances of the case.'" *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal citation omitted) (first quoting *McGehee v. CIA*, 697 F.2d 1095, 1100-01 (D.C. Cir. 1983); and then quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)). When an agency's search is challenged, the question to be answered is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *Judicial Watch, Inc. v. U.S. Dep't of State*, 681 F. App'x 2, 4 (D.C. Cir. 2017) (per curiam) (quoting *SafeCard Servs.*, 926 F.2d at 1201).

While recognizing that the adequacy of an agency's search is not measured by "the results," Pl.'s Reply at 5, but "by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), Pl.'s Reply at 5 (making similar point), plaintiff contends that defendant improperly construed its FOIA requests, did not search all relevant custodians and locations where responsive records may reasonably be located and used improper search terms.  Pl.'s Opp'n at 22-35; Pl.'s Reply at 4-26.  These objections are addressed *seriatim*.

### A.    Scope of Plaintiff's FOIA Requests

"In order to determine whether a search for responsive records was adequate, a court must first determine the scope of the documents the plaintiff requested." *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 66 (D.D.C. 2017).  "Agencies have 'a duty to construe a FOIA request liberally.'" *PETA v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Nat.*

*Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). This duty, however, does "not require" an agency "to 'extend the meaning of the request to include things' that the requester did not seek.'" *Dillon v. U.S. Dep't of Justice*, 444 F. Supp. 3d 67, 85 (D.D.C. 2020) (quoting *Wallick*, 281 F. Supp. 3d at 67). "In determining the proper scope of a FOIA request, '[t]he linchpin inquiry is whether the agency is able to determine 'precisely what records (are) being requested.'" *McKinley v. FDIC*, 807 F. Supp. 2d 1, 5 (D.D.C. 2011) (alterations in original) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)).

Here, the parties primarily dispute the scope of plaintiff's Group 1 FOIA requests. Defendant argues that "[p]laintiff requested records concerning the Rock Spring Grazing Association grazing allotments or management and grazing authorizations," 2d Allred Decl. ¶ 21, and read these requests as "limited to records involving [RSGA]'s grazing operation." Def.'s Reply at 9. In other words, defendant understood the requests to seek records concerning RSGA's grazing allotments, RSGA's management of these grazing allotments, and RSGA's grazing authorizations issued by defendant. As noted, *supra* Part I.B., to identify these records, BLM uses two primary files for administering grazing authorizations: the Allotment File and the Grazing Case File, Allred Decl. ¶ 29, though information in both files "often overlap and contain the same information, such as allotment maps," *id*. ¶ 30. To begin, both files were searched manually, record-by-record to identify responsive records. Allred Decl. ¶ 34; 2d Allred Decl. ¶ 17 (describing search of "every individual file…one by one" and explaining that "[b]y choosing to review the folder in its entirety, my review of all files was not limited by the use of search terms and therefore could not have been expanded by use of them either").

Recall that Group 1's Item 1 seeks records "that discuss or describe [RSGA] or the grazing allotments" RSGA is authorized to use that are "maintained within

'Allotment/Management files.'"  Plaintiff argues that defendant's understanding of this request improperly "narrowed . . . the search to records in the Allotment File and Grazing File only," Pl.'s Opp'n at 34, because, in contrast to defendant's understanding, plaintiff contends that items 2-5 in the Group 1 were "wholly disregarded," Pl.'s Reply at 21.  Plaintiff apparently wants the items in the Group 1 requests to be read broadly as seeking records regarding RSGA's grazing allotments and *general* management of the land which RSGA is permitted to use for grazing, whether that management is performed by RSGA or BLM, or, presumably, any other actor on these public lands, notwithstanding that each item is prefaced with limiting text of "[a]ll records that discuss or describe [RSGA] grazing allotments or management."

The record supports defendant's reading of the requests as reasonable through simple application of normal grammatical and syntax rules.  A possessive noun naturally applies its possession to the whole list of items that follow it.  For example, "John's house or car" refers to a house and car that John "own[s], possess[es], or occup[ies]."  THE CHICAGO MANUAL OF STYLE ONLINE 5.22.  Here, defendant reasonably understood and naturally read RSGA to be used as a possessive noun, with the objects to be both "grazing allotments" and "management."  Indeed, no other noun is used in these requests to suggest that plaintiff was seeking information about BLM or any other actor's "management" of any portion of the Rock Springs Allotment.

"Agencies must read and interpret a FOIA request as it was drafted, 'not as either [an] agency official or [the requester] might wish it was drafted.'"  *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 155 (D.D.C. 2010) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)).  Plaintiff's proffered reading of the requests as seeking records pertaining to management by BLM and others, of about one million acres of the public lands used by RSGA is a broad expansion of the requests' scope and is not the most natural reading, as a matter of syntax, of the

requests' plain terms. Indeed, as now spelled out in summary judgment briefing, plaintiff's reading is seemingly an expansion over the way plaintiff described the requests as "records concerning Rock Springs Grazing Association," in earlier stages of litigation in the later filed action. *See supra* Part I.C. Plaintiff's current reading would require rewriting the request to read in items 2-5 of the Group 1 requests to add the italicized text to the preface to each item: "All records that discuss or describe Rock Springs Grazing Association grazing allotments or *BLM's or others'* management *of anything on RSGA's grazing allotments*." Plaintiff may wish now that the request so read, *see* Pl.'s Opp'n at 35 (referencing that "BLMs' management decisions regarding wild horses" would be responsive to its request), *id.* at 39 ("AIM records are integral to BLM's management of grazing allotments."), but an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

Further underscoring the reasonableness of defendant's construction is that its reading does not "read" words out of the request, *LaCedra v. Exec. Off. for U.S. Atty's*, 317 F.3d 345, 348 (D.C. Cir. 2003), but instead gives meaning to each word, providing "a 'professional employee of the agency who was familiar with the subject area of the request' to 'locate the record with a reasonable amount of effort.'" *Dillon*, 444 F. Supp. 3d at 84 (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990)).

With respect to the Group 2 requests, plaintiff similarly argues that defendant improperly focused on item 1 of the request even though seven separate items were requested. Pl.'s Reply at 10, 21. Allred's supplemental declaration cites the specific direction in Group 2's item 1 limiting the location to be searched to "Grazing Case Files" and the other six items restricted to "RSGA's grazing authorizations," in defending his decision that emails concerning wild horse

14

gather operations would not be responsive to plaintiff's requests.  Plaintiff's complaint appears to be, again, that the separate requests in Group 2 were to be read as somehow disconnected to RSGA's own grazing authorizations despite the prefatory language so limiting the reach of each item.  Defendant properly construed the requests as not seeking records regarding BLM's management of the Rock Springs Allotment, and plaintiff provides no argument as to how communications about BLM's management plans and activity, including those as to wild horses, are somehow responsive to its requests for "[a]ll records that discuss or describe all [RSGA] grazing authorizations."  Without more, there is no genuine dispute that defendant reasonably construed plaintiff's Group 2 requests.

Given defendant's reasonable reading of the requests at issue, plaintiff's complaints that that defendant did not search for and produce emails or other records regarding BLM's "wild horse and wild horse gather operations," Pl.'s Reply at 11, to show the inadequacy of the search fall short.  As properly construed, the request sought records discussing or describing "RSGA's grazing operation," which does not reasonably "include correspondence with RSGA related to other programs, such as wild horse management, oil and gas development, mining, etc."  2d Allred Decl. ¶ 10.  Even crediting plaintiff's belief that "BLM's management of the Rock Springs Allotment overlaps with wild horses," Pl.'s Reply at 11, does not help here but is beside the point.  The requests, even liberally construed, do not seek records related to BLM's management of the Rock Springs Allotment to cover wild horses or any other BLM program to monitor or manage other resources on this public land and, instead, the requests are limited to RSGA's own management of the portions of the Rock Springs Allotment for which RSGA has grazing authorizations.

In sum, based on a reasonable reading of the plain terms of the FOIA requests at issue, defendant reasonably construed the scope of the items sought in Group 1 and Group 2 requests.

### B.    Custodians and Locations

Plaintiff next argues that defendant's search was inadequate for limiting the search to the Rock Springs Field Office and to two custodians because other locations, including certain BLM databases, and other custodians are likely to have responsive records, both within and outside of this Field Office location.  Pl.'s Opp'n at 25-41; Pl.'s Reply at 8-20.  Each argument is addressed in turn after a review of the relevant legal standard.

"While the agency need not 'search every record system,'" to satisfy FOIA's burden of conducting an adequate search, "it also may not 'limit its search to only one record system if there are others that are likely to turn up the information requested.'"  *Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d at 68); *Kowal v. U.S. Dep't of Justice*, 107 F.4th 1018 (D.C. Cir. 2024) ("Agencies are not required 'to examine virtually every document in their files' or 'follow an interminable trail of cross-referenced documents.'" (brackets omitted) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994))).  "[A] 'positive indication of overlooked materials' can lead a court to determine" that an agency conducted an inadequate search by searching insufficient locations.  *Montgomery*, 40 F.4th at 715 (quoting *Valencia-Lucena*, 180 F.3d at 327).  "Mere speculation that additional documents *might* be found in another [location]," however, "is not enough to render an agency's search inadequate."  *Nolen v. Dep't of Justice*, 146 F. Supp. 3d 89, 97 (D.D.C. 2015) (citing *Meeropol v. Meese*, 790 F.2d 942, 954 (D.C. Cir. 1986)).

Plaintiff posits that "an agency cannot foreclose some search criteria just because it believes others are 'most likely' to return responsive records,"  Pl.'s Opp'n at 26 (citation

omitted), and goes on to contend that Wallace's identification of the Rock Spring's Field Office as the "most likely" location to contain responsive records and the subsequent decision from Aleshire that Allred and Foster were the "most likely" custodians, did not satisfy defendant's search obligations under FOIA,  Pl.'s Opp'n at 25-27; Pl.'s Reply at 8-12.  To bolster this argument, plaintiff points to records purportedly showing that other individuals, both within and outside the Rock Springs Field Office, are likely custodians of responsive records.  Pl.'s Opp'n at 26; Pl.'s Reply at 8.

With respect to the selection of the Rock Springs Field Office, defendant has made good-faith averments that the Rock Springs Field Office was not just the "most likely" location that would maintain records responsive to plaintiff's request, but that it was the "only" location, Crockett Decl. ¶ 10.  Based on the plain terms of the requests—rather than what plaintiff wished had been requested—Wallace based that determination on a variety of imminently reasonable factors: (a) the Rock Springs Field Office was the custodian of RSGA documents; (b) this Field Office handles all RSGA requests; (c) this Field Office is geographically the most relevant because of its location within the Rock Springs Allotment and responsibilities for handling BLM's relationship with RSGA, which is the focus of plaintiff's FOIA requests.  *Id.*  Plaintiff does not dispute these reasons nor provide any countervailing evidence to overcome defendant's chosen location to search for records, but instead simply argues that other offices are likely to maintain responsive records.  Pl.'s Reply at 19-20.  Such claims rise to nothing more than "mere speculation," and do not overcome defendant's declarations.  *DiBacco*, 795 F.3d at 191 (quoting *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam)).  As such, there is no "substantial doubt," *id.* at 188 (quoting *Valencia-Lucena*, 180 F.3d at 326), that defendant properly determined the Rock Springs Field Office as "the only [office] likely to include

responsive records," *Schoenman v. FBI*, 764 F. Supp. 2d 40, 49 (D.D.C. 2011) (citation
omitted)).

 With respect to the selection of two custodians within the Rock Springs Field Office,
Aleshire approached Allred and Foster because they were the "most likely" custodians and was
assured by Allred and Foster that they would be the "only custodians with responsive records."
Crockett Decl. ¶ 12.  Further, Allred has averred that "all locations likely to contain responsive
materials," have been searched.  2d Allred Decl. ¶ 28.  To cast doubt on these assurances,
plaintiff provided, in opposition to defendant's summary judgment motion, a letter authored by
Rock Springs Assistant Field Manager Gavin S. Lovell ("Lovell") to permittees authorized to
graze on the Rock Springs Allotment, including RSGA, as an example of Lovell being a likely
custodian of responsive records.  2d Perrin Decl., Ex. 103 ("Nov. 07, 2019, Ltr., from Lovell"),
ECF No. 27-5.

 This Lovell letter was dated within the responsive period of the FOIA requests at issue
and was indisputably responsive to the plaintiff's requests.  Notably, this letter was eventually
routed to Allred and produced in this litigation.  In this respect, then, this Lovell letter is an
example of the thoroughness of defendant's search since it was produced.  Yet, plaintiff's point
is well taken that other personnel within the Rock Springs Field Office also had communications
with RSGA that may be responsive to the FOIA requests at issue.  Defendant's only response to
plaintiff's submission of the Lovell Letter as an example of responsive communications between
RGSA and BLM personnel other than the two custodians in that office is that "Foster and . . .
Allred would be the only custodians of any potentially responsive records,"  Def.'s Reply at 16,
without otherwise making any effort to "explain why the remaining individual[] [was] excluded
and not deemed likely to have responsive records, despite [his] presence on [records] discussing"

RSGA. *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 142 (D.D.C. 2017).  As such,

the "document[] disclosed by" defendant raises legitimate question regarding the reasonableness

of defendant's determination of relevant custodians, "and thus the search[] likely failed to be

'reasonably calculated to uncover all relevant documents.'"  *Id.* at 141 (internal citation omitted)

(quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir.

2011)).  Whether Lovell is a likely custodian of records whose communications must be

searched or defendant can offer a more fulsome explanation as to why Lovell was not added as a

custodian is, on the current record, unclear, requiring denial of summary judgment to both sides.

Plaintiff also argues in its cross-motion for summary judgment that other BLM

employees, outside the Rock Springs Field Office, including BLM Wyoming State Director, the

BLM Wyoming Deputy State Director, the BLM Wyoming High Desert District Manager, would

also likely possess responsive records.  Pl.'s Opp'n at 27.  Other than this bald assertion based on

plaintiff's broad reading of its own requests, no other argument was presented.  Not until

plaintiff's reply, when defendant was put in a "manifestly unfair" position by being "unable to

respond" without seeking leave to file a surreply, *Dialysis Patient Citizens v. Azar*, No. 20-cv-

1664 (TSC), 2021 WL 184318, at * 6 (D.D.C. Jan. 19, 2021) (quoting *Herbet v. Nat'l Acad. of

Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)), did plaintiff submit purported "countervailing

evidence" in the form of emails produced by BLM in response to different FOIA requests, Pl.'s

Reply, Attach 1, Third Decl. of Amelia Martine Perrin ("3d Perrin Decl."), Exs. 116-118, ECF

Nos. 32-4 to 32-6.

At the outset, this is not a litigation strategy helpful to the Court in reaching a fair and

appropriate resolution to this case.  *See Taitz v. Obama*, 754 F. Supp. 2d 57, 61 (D.D.C. 2010)

("To the extent that plaintiff offers new factual arguments in her reply to defendant's opposition,

the Court will disregard these arguments.").  Moreover, plaintiff's belatedly submitted emails do

not necessarily support plaintiff's position that these named BLM employees outside of the Rock

Springs Field Office would have records responsive to the FOIA requests at issue here.  For

example, one email discusses prior litigation between RSGA and defendant, 3d Perrin Decl., Ex.

116, ECF No. 32-4, and the other two emails contain references to wild horse gather operations

on the Rock Springs Allotment, 3d Perrin Decl., Exs. 117-18, ECF Nos. 32-5 to 32-6.  These

records simply reflect that RSGA communicated with these individuals regarding topics that

were not requested in plaintiff's requests, as properly understood by defendant. *See supra* Part

III.A.  As such, where, as here with respect to these three individuals, "the requester's

'countervailing evidence' fails to 'raise a 'substantial doubt' as to the adequacy of the agency's

search,' summary judgment for the agency on this issue is appropriate."  *Kowal v. U.S. Dep't of

Justice*, No. 18-cv-2798 (TJK), 2022 WL  2315535, at *2 (D.D.C. June 27, 2022) (brackets

omitted) (quoting *Schoenman v. FBI*, 764 F. Supp. 2d 40, 51-52 (D.D.C. 2011)).  Accordingly,

defendant need not expand the search for responsive records, as plaintiff demands, to the BLM

Wyoming State Director, the BLM Wyoming Deputy State Director, the BLM Wyoming High

Desert District Manager.

Finally, plaintiff challenges the adequacy of the search for failing to search and produce

records from four specific databases, for two of which defendant provided, as part of its response

to the FOIA requests at issue, links to the databases available publicly on BLM's website.  Pl.'s

Opp'n at 27-33; Pl.'s Reply at 12-18.  The first database identified by plaintiff is the Rangeland

Administration System ("RAS") database, which plaintiff argues, based on review of BLM

manuals and regulations, should contain responsive records, but was not searched.  Pl.'s Opp'n at

20

30-31; Pl.'s Reply at 12-13.[4]  Defendant did export and produce a record titled "RSGA

Compliance (2018-2021)" exported from the RAS database that was not saved in the Allotment

or Grazing Case files.  Def.'s Reply at 10-12.  The reason for defendant's confidence that

responsive records housed on the RAS database would have been produced is that "[f]or the

most part, RAS is not the location where the BLM maintains official records; rather, it is the

system that is used to generate an official record," which when executed "constitutes the official

record" and "is placed in the permitted Grazing Case File," 2d Allred Decl. ¶ 23, or "appropriate

Allotment File," *id.* ¶ 22, Def.'s Reply at 10.  As one declarant explains, "even if we did pull the

unofficial permit from RAS, it would not provide any information that is not already stored in

the Grazing case file. In fact, it would provide less."  2d Allred Decl. ¶ 23.  Thus, according to

defendant, responsive data maintained on RAS would also be retained in, searched and produced

from the review performed of RSGA's Grazing Case Files and Allotment Files.  2d Allred Decl.

¶ 14.  This explanation for why a search of the RAS database would be redundant or less

effective in uncovering responsive records than the search performed provides a reasonable basis

for the manner in which defendant treated this database. *See Clemente v. FBI*, 867 F.3d 111, 118

(D.C. Cir. 2017) (finding FBI had no need to conduct search demanded by plaintiff where "FBI

explained in its declarations, those searches would have been redundant").

---

[4]    The "purpose" of the RAS database is to—

(1) maintain an orderly record of grazing permittee information, allotment information, historical
allotment or grazing permittee information used to manage authorized grazing and grazing related
activity on public land; (2) maintain support documentation to manage authorizations; (3)
maintain billing and collections information; (4) maintain grazing decisions; (5) maintain
correspondence related to grazing authorizations and allotments; (6) document unauthorized use;
(7) enable the BLM to effectively administer livestock grazing and associated activities on public
lands; and (8) provide information to state, local and tribal governments, and other Federal
agencies, businesses, organizations, and individuals to assist in transparency and promote the
orderly administration of livestock grazing on public lands.

2d Perrin Decl., Ex. 103 (Notice, 45 Fed. Reg. 82061, 82062 (Dec. 28, 2010) ("RAS Notice")) at 2-4, ECF No. 27-7.

Moreover, to the extent plaintiff suspects RSGA compliance records and "lien or lienholder records" may be located, but not searched for, on the RAS database, Pl.'s Opp'n at 30-31, these suspicions appear to be baseless. *Id*. ¶¶ 24-26 (explaining non-compliance issue records would be stored in the Grazing Case file and "the only record of these compliance checks is in the RAS database," hence production of the exported compliance report; and "records regarding lienholder interest are not stored in RAS" but also "in the associated Grazing Case File, which has been searched."). To the extent the RAS database contains responsive records, defendant's search thus appears, based on this record and description of the information available in this database, to be adequate.

Next, plaintiff argues that two other databases—the Assessment, Inventory, and Monitoring ("AIM") database and Landscape Monitoring Framework ("LMF") database—were responsive to plaintiff's requests and were not searched and no underlying data from these databases were produced. Pl.'s Reply at 13-18. The AIM database contains datasets for uplands monitoring and datasets for monitoring perennial streams and rivers, 2d Perrin Decl., Ex. 6 ("BLM Guide to Using AIM and LMF Data") at 4, ECF No. 27-6, including records related to ground cover, plants, soils, stream characteristics, and other records related to physical characteristics of the land, Pl.'s Opp'n at 36; Pl.'s XMSJ, Attach. 15, Declaration of Braden Stuart Rischel ("Rischel Decl.") ¶ 18, ECF No. 27-15. The LMF database is used to assess and monitor renewable resources on BLM's managed rangelands in western states. Pl.'s Opp'n at 32; BLM Guide to Using Aim and LMF Data at 4-5. In response to plaintiff's FOIA request for "monitoring plans," *see, e.g.,* Group 1, item 4, defendant explained that BLM had no current "monitoring plan for the Rock Springs Allotment" and that the "only monitoring data collected in the allotment in recent years is" AIM data, which "is not specific to grazing management or

the Rock Springs Grazing Allotment." 2d Allred Decl. ¶ 27. Put another way, this response

suggested that no AIM data precisely responsive to the FOIA requests was available.

Nonetheless, the BLM response went on to provide plaintiff with a link to the "public facing

website" to access the "quality-checked data," which data is "collected entirely electronically

and uploaded to a national server," by a contractor, such that defendant "does not have any

records in the office, paper or electronic, regarding this data." Def.'s Reply at 12-13; *see also* 2d

Allred Decl. ¶ 27.

Plaintiff is not satisfied with this response, construing the fact that defendant provided

plaintiff with a link to the BLM website where this data is publicly available as a concession that

AIM and LMF data is responsive to the requests but nevertheless declining to release the

underlying data directly to plaintiff. Pl.'s Reply at 14-15; Def.'s Reply at 12-13. Defendant

certainly did not concede this data is responsive to plaintiff's requests. To the contrary,

defendant expressly stated these datasets did not qualify as requested "management plans" and

were outside the scope of plaintiff's requests since the datasets were "not specific to grazing

management or the Rock Springs Grazing Allotment." 2d Allred Decl. ¶ 27. In addition, the

data were collected electronically, processed and uploaded to a national server all by a

contractor, with defendant's own access to the data through the public-facing website and just as

easily available to plaintiff. The law is well-settled that "an agency need not respond to a FOIA

request for copies of documents where the agency itself has provided an alternative form of

access." *Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1065 (D.C. Cir. 1988); *see also U.S.*

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 152 (1989) (stating "an agency need not disclose

materials that it has previously released"); *Morley*, 894 F.3d 389, 394-395 (D.C. Cir. 2018)

("[It]t would seem inefficient (to put it mildly) to require an agency such as the CIA to expend

scarce agency resources repeatedly gathering anew copies of documents that the agency had already gathered and made available to the public at the Archives."). For both reasons, plaintiff pointing to defendant's provision of a link to publicly accessible BLM datasets does not undermine the adequacy of the search.[5]

Finally, plaintiff argues that defendant failed to search BLM's Range Improvements System, or RIPS database, used to track the establishment and maintenance of range improvements, which are "man-made or man-caused features on the landscape designed and implemented for the purpose of improving the available forage, managing the season of use or use patterns and enhancing the overall rangeland health of areas available for domestic livestock use." 3d Perrin Decl., Ex. 122 ("BLM Colorado Range Improvements (MapServer) Description") at 2-3, ECF No. 32-10. According to plaintiff, a search of this data would be responsive to Group 2's item 6 request for "all records that discuss or describe all Rock Springs Grazing Association (RSGA) grazing authorizations – improvements, assignment of range improvements, copies of range Improvement permits or co-operative agreements." Pl.'s Reply at 13. This argument is both belated and insufficient to show inadequacy of defendant's search. Plaintiff mentioned RIPS for the first time only in reply, perhaps for a strategic "gotcha" reason, *compare* Pl.'s Opp'n (not raising this argument), *with* Pl.'s Reply (making the argument that the

---

[5]        Plaintiff resists this conclusion, arguing that merely because a third-party contractor holds data for an agency does not mean that the agency's FOIA obligations are obviated, and defendant "should be ordered to search for and release all responsive records of AIM and LMF data. Pl.'s Reply at 15 (citing 5 U.S.C. § 552(f)(2)(B) (defining a "record" subject to FOIA as including "any information . . . that is maintained for an agency by an entity under Government contract, for the purpose of records management"). As discussed, however, defendant's decision, and not concession, to provide a link to the public-facing data does not support the position that it failed to conduct an inadequate search. To the extent plaintiff's argument suggests that defendant has improperly withheld the data, plaintiff has waived the issue by failing to provide legal authority or developed arguments on that point, maintaining only that defendant failed to conduct an adequate search. Pl.'s Opp'n at 22-35; Pl's Reply at 4-25; *Apprio, Inc. v. Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024) ("Moreover, '[a] party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (quoting *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019))).

RIPS database should have been searched), and, as already noted, such belated arguments place defendant in an unfair position and are waived, *see Taitz*, 754 F. Supp. 2d at 61 ("Courts ordinarily decline to consider arguments that are raised for the first time in a reply to an opposition.").

Moreover, it is not clear that this data would be responsive to Group 2's item 6 request. To be sure, the description of RIPS uses the word "improvements" as does item 6, but item 6 relates to RAGA's grazing *authorizations*. The RIPS database seemingly relates to improvements regarding an allotment and not to an organization's authorization to graze on the allotment. To the extent the underlying records in RIPS relate to RSGA's grazing authorizations, then the underlying records were likely already produced, and any RIPS data related to BLM or others' range improvements on these same allotments are not responsive to the Group 2 requests.

## C.    Search Terms

As a final arrow in its quiver, plaintiff claims that the search terms defendant used in its search were "not reasonably calculated to uncover all relevant records." Pl.'s Opp'n at 22. Defendant argues that the terms "RSGA," "Rock Springs Grazing Association," and the email search term "rsga@wyoming.com" were sufficient, and additional search terms were "not necessary." Def.'s Reply at 13-14.

"Search terms" must be "reasonably calculated to turn up the records [the FOIA requester] sought." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 405 (D.C. Cir. 2017). To avoid, "micro manag[ing] the executive branch," *Johnson v. Exec. Off. for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002), a federal agency may use its judgment to craft its search terms in a way that it believes "can be reasonably expected to produce the information requested," *Kowal*, 107 F.4th at 1029 (D.C. Cir. 2024) (quoting *Oglesby*, 920 F.2d at 68). *See*

*also Coffey v. Bureau of Land Mgmt.*, 249 F. Supp. 3d 488, 498 (D.D.C. 2017) ("A federal agency has 'discretion to craft a list of search terms that it believes is reasonably tailored to uncover documents responsive to the FOIA request." (brackets omitted) (quoting *Agility Pub. Warehousing Co. v. NSA*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015)).  While an agency need not "knock down every search [term] design advanced by every requester," its chosen terms must be "reasonable."  *DiBacco*, 795 F.3d at 191; *see also Coffey*, 249 F. Supp. 3d at 498 (noting that the discretion given to an agency to choose search terms not "boundless" and "must pass muster under 'a standard of reasonableness'" (citing and quoting *Physicians for Hum. Rts. v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009)).  Like other aspects of an agency's search for records, when the plaintiff produces "countervailing evidence," *Iturralde*, 315 F.3d at 314, that raises genuine disputes of material fact as to an agency's chosen search terms "summary judgment must be denied," *DiBacco*, 795 F.3d at 187 (quoting *Valencia-Lucena*, 180 F.3d at 326.  *See also Leopold v. Dep't of Def.*, 752 F. Supp. 3d 66, 86 (D.D.C. 2024) ("[W]hen the plaintiff 'produce[s] countervailing evidence' that reveals 'problems with . . . the specific search terms used,' that may be 'sufficient to establish a genuine dispute of material fact as to the adequacy of the search.'" (quoting *Flete-Garcia v. U.S. Marshals Serv.*, 613 F. Supp. 3d 425, 432-33 (D.D.C. 2020)).

First, plaintiff argues that defendant's searching the custodians' emails with the term "rsga@wyoming.com" was too limited.  Pl.'s Opp'n at 24-25; Pl.'s Reply at 6-8.  Specifically, plaintiff contends that, in addition to searching for responsive records using the "rsga@wyoming.com" email address, the custodians should have searched their emails for "John Hays III," the president of RSGA, and "Don Schramm," RSGA's Land Operations Manager. Pl.'s Reply at 6-7.  In response, defendant asserts that "the only time that an alternate email was

used by or associated with . . . John Hay III [the correct name of RGSA's president]. . . the Association would email the Bureau from the rsga@wyoming.com account and cc john.hay.iii@rsnb.com." Def.'s Reply at 6 (quoting Allred Decl. ¶ 20). Further, according to defendant, "Don Schramm only ever communicated with the Bureau's Rock Springs Field Office using the rsga@wyoming.com address." *Id.* (citing Allred Decl. ¶ 20). Thus, in defendant's view, "by searching for all emails from rsga@wyoming.com, [defendant] would also be able to identify all instances of" communications with either John Hay III or Don Schramm. Def.'s Reply at 6. Casting doubt on defendant's averments, plaintiff has submitted an email, produced in response to a separate FOIA request, where John Hay III communicated with Allred about RGSA business using the email address "hayjohn3@gmail.com" without using the email address "rsga@wyoming.com." 3d Perrin Decl., Ex. 119 ("Email from John Hay III to Spencer Allred"), ECF No. 32-7.

"When a plaintiff identifies documents not found by the agency, the agency must 'explain those holes in the record, such that the Court is 'able to ascertain if the agency has explained the absence' of response records from the results of the search." *Davita Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-1798 (BAH), 2021 WL 980895, at *7 (D.D.C. Mar. 16, 2021) (cleaned up) (first quoting *Ctr. for Biological Diversity*, 2021 WL 918204, at *8; and then quoting *Morley*, 508 F.3d at 1121). While not an "insurmountable burden," *id.*, defendant cannot square its averment that John Hay III used no other email addresses to communicate with Allred without the rsga@wyoming.com email address given the existence of an email that shows the opposite. Defendant, on remand, must search the emails of its custodians for "John Hay III," and variations thereof. On the other hand, plaintiff, has not provided evidence of overlooked material that demonstrates the existence of other email addresses Don Schramm may have used

to communicate on behalf of RSGA with BLM.  In sum, then, plaintiff has raised a sufficient factual issue as to the adequacy of defendant's search for "John Hay III," and variations thereof, but not as to additional searches for "Don Schramm" and variations thereof.

Second, plaintiff argues that in addition to "RSGA" and "Rock Spring Grazing Association," defendant should have searched for "Rock Spring Allotment," "WY13018," the Rock Springs Allotment number, "4904655," RSGA's grazing authorization number, and range improvement numbers across its computer network.  Pl.'s Reply at 19-20.  Defendant counters that "all files relating to the Rock Springs Allotment and the Association were saved exclusively in the 'ROCK SPRINGS – 13018' digital folder," Def.'s Reply at 14, which defendant reviewed in its entirety.  As such, plaintiff's proposed search terms would have been "redundant" because the custodians "would have been reviewing the same batch of files over and over, using different searches to find the same results."  2d Allred Decl. ¶ 17.

Using "RSGA" and "Rock Springs Grazing Association," defendant's search terms appropriately targeted logical variations of the association's name in each of plaintiff's requests may be "reasonably calculated to uncover all relevant documents."  *Ancient Coin*, 641 F.3d at 514 (quoting *Valencia-Lucina*, 180 F.3d at 325); *see also Citizens for Resp. & Ethics in Wash. v. GSA*, No. 18-cv-377 (CRC), 2018 WL 6605862, at *5 (D.D.C. Dec. 17, 2018) ("Part of liberally construing a request is searching for 'synonyms' and 'logical variations' of the words used in the request.").  Indeed, defendant states that additional search terms were not necessary because "it was not necessary to utilize search criteria to search the Bureau's entire computer network," Def.'s Reply at 14; 2d Allred Decl. ¶ 15, and, instead, Allred "manually went through the ROCK SPRINGS – 13018 folder to find all responsive records."  2d Allred Decl. ¶ 15. While this may seemingly contradict the declaration of Crockett, who claims that "[t]he identified Custodians

28

then electronically searched the shared drive in their office, government assigned laptops, desktops, and hard drives for records," Crockett Decl. ¶ 14, it does not "raise 'substantial doubt' about the adequacy of the agency's search and the veracity of [the] declarations," *Hammond v. Dep't of Def.*, No. 16-cv-421 (FYP), 2021 WL 6049886, at *7 (D.D.C. Dec. 21, 2021) (quoting *Iturralde*, 315 F.3d at 314), because Allred's manual review of the location defendant deemed likely to contain all responsive records is arguably more comprehensive that running search terms across the network. Thus, this inconsistency between the affidavits is immaterial. *Citizens for Resp. & Ethics in Wash. v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 56 (D.D.C. 2006) (noting that an agency's affidavits are accorded a presumption of good faith that can be overcome when a plaintiff shows "material conflict" between agency affidavits).

\*\*\*

The touchstone of an adequate search is reasonableness, not perfection. *See DiBacco*, 795 F.3d at 191 ("[A]dequacy—not perfection—is the standard that FOIA sets."). In that vein, "to fulfill its obligations under FOIA, 'an agency need not move heaven and earth to locate and produce requested records, and this is so even when the sought-after documents are known to exist and to have once been in the agency's possession.'" *Davita*, 2021 WL 980895, at *9 (quoting *Gawker Media, LLC v. U.S. Dep't of State*, 266 F. Supp. 3d 152, 158 (D.D.C. 2017)). This is true because "[courts] focus on the process, not the results, when determining the adequacy of a FOIA search." *Kowal*, 107 F.4th at 1027.

"[I]f a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials," however, "[s]ummary judgment must be denied." *DiBacco*, 795 F.3d at 187 (quoting *Valencia-Lucena*, 180 F.3d at 326). Here, plaintiff's "countervailing evidence," *Iturralde*, 315 F.3d at 314, reveals a couple holes, albeit

small ones, in defendant's search.  On remand, defendant must "either supplement [its]

declarations to address the genuine issues of material fact that plaintiff [has] raise[d] . . . or else

perform an additional search to locate" responsive records in accordance with the

contemporaneously entered order.  *Forest County*, 278 F. Supp. 3d at 194.

## IV.    CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in part,

and denied in part.  Defendant's search was adequate in interpreting plaintiff's FOIA requests,

the locations to be searched, search terms and methods used (with one exception), and the

selection of custodians (with one exception).  Accordingly, defendant's motion for summary

judgment is granted, except as to the adequacy of the search of potential custodian Rock Springs

Assistant Field Manager Gavin S. Lovell and using the additional search term of the RGSA

president at his personal email address for email communications.  Plaintiff's cross-motion for

summary judgment is denied.

The parties are directed to file a joint status report by May 9, 2025, advising this Court of

the status of this matter.  An order accompanying this opinion will be entered

contemporaneously.

Date: April 17, 2025

_____
**BERYL A. HOWELL**
United States District Judge